**CYCLE CITY, LTD., a Hawaii company, Plaintiff,**

v.

**HARLEY–DAVIDSON MOTOR COMPANY, INC., a Wisconsin corporation, Defendant.**

**CV. No. 14–00148 HG–RLP.**

United States District Court, D. Hawai'i.

Signed Oct. 17, 2014.

Alejandro Brito, Beshoy Rizk, Kaari–
Lynn S. Gagnon, Robert F. Salkowski,
Robert Zarco, Zarco Einhorn Salkowski &

Brito, P.A., Miami, FL, Jesse J.T. Smith, Kenneth J. Mansfield, William C. McCorriston, McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, for Plaintiff.

Francis P. Hogan, Michael W. Gibson, Ashford & Wriston, LLP, Honolulu, HI, Roberta F. Howell, Foley & Lardner, LLP, Madison, WI, for Defendant.

**ORDER DENYING DEFENDANT HARLEY–DAVIDSON MOTOR COMPANY INC.'S MOTION TO TRANSFER CASE (ECF NO. 28), GRANTING IN PART AND DENYING IN PART DEFENDANT HARLEY–DAVIDSON MOTOR COMPANY INC.'S MOTION TO DISMISS (ECF No. 21), AND GRANTING PLAINTIFF CYCLE CITY, LTD.'S REQUEST FOR LEAVE TO AMEND**

HELEN GILLMOR, District Judge.

Plaintiff Cycle City, Ltd.'s suit arises out of Defendant Harley–Davidson's allegedly unlawful failure to renew the parties' distributorship agreement for the exclusive distribution, sale and service of Harley–Davidson motorcycles, parts, and accessories in Hawaii. Plaintiff alleges violation of the Hawaii Motor Vehicle Industry Licensing Act, Haw.Rev.Stat. § 437–1 *et seq.* and breach of distributorship and trademark license agreements. The parties also dispute whether this Court or a court in Wisconsin is the proper forum.

Defendant Harley–Davidson Motor Company's Motion to Transfer Case (ECF No. 28) is **DENIED.**

Defendant Harley–Davidson Motor Company's Motion to Dismiss (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART.**

Plaintiff Cycle City's request for leave to amend is **GRANTED.**

### PROCEDURAL HISTORY

On March 26, 2014, Plaintiff Cycle City, Ltd. ("Cycle City" or "Plaintiff") filed a Complaint. (ECF No. 1.)

On June 4, 2014, Defendant Harley–Davidson Motor Company, Inc. ("Harley–Davidson" or "Defendant") filed a Motion to Dismiss. (ECF No. 21.)

On June 19, 2014, Plaintiff filed an Opposition. (ECF No. 25.)

On July 2, 2014, Defendant filed a Reply. (ECF No. 27.)

On that the same day, Defendant filed a Motion to Transfer Case. (ECF No. 28.)

On July 9, 2014, the Court held a hearing on Defendant's Motion to Dismiss. (ECF No. 29.) The Court continued the hearing on Defendant's Motion to Dismiss to allow for briefing of the Motion to Transfer Case and set both motions for hearing on September 22, 2014.

On July 25, 2014, Plaintiff filed an Opposition to Defendant's Motion to Transfer Case. (ECF No. 35.)

On August 6, 2014, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion to Transfer Case. (ECF No. 37.)

On September 22, 2014, Defendant's Motions to Transfer Case and to Dismiss came on for hearing.

### BACKGROUND

This case involves a dispute between Harley–Davidson, a manufacturer of motorcycles and related products and services, and Cycle City, Harley–Davidson's exclusive Hawaii distributor for the past 48 years. (Compl. ¶¶ 2, 6.) Since 1966, Plaintiff "Cycle City has served as the exclusive distributor for the distribution, sale and service of Harley–Davidson motorcycles, OEM parts, accessories, MotorClothes®

and Officially Licensed Products through Harley–Davidson dealers and licensees appointed by distributor ...." (Compl. ¶ 6.) During this time, Cycle City contends that it has built an extensive customer base and dealer network. (Compl. ¶¶ 7, 9.) Cycle City alleges that it has "exponentially increased the brand awareness, goodwill, popularity and the reputation of the Harley–Davidson brand throughout Hawaii" and that "[a]s a direct result of the efforts of Cycle City, retail sales of Harley–Davidson motorcycles and products have surged and represent a significant amount of all motorcycle sales made in this state." (Compl. ¶ 7.)

Cycle City has served as the exclusive distributor under distributorship agreements. (Compl. ¶ 8.) Cycle City contends these distributorship agreements were renewed automatically, with the most recent Distributorship Agreement being entered into on November 24, 2008. (Compl. ¶ 8 and at Exh. A, hereinafter, "Distributorship Agreement"). In addition to its role as exclusive distributor, Cycle City owns and operates Harley–Davidson dealerships on Oahu and Maui. (Compl. ¶ 9.) The two other Harley–Davidson dealerships located in the State of Hawaii are owned by Aloha Auto Group, Inc., an independent third-party, and are located on the Islands of Kauai (Kauai Harley–Davidson) and Hawaii (Big Island Harley–Davidson). (Id.)

Cycle City also had a separate License Agreement with Harley–Davidson to manufacture certain goods bearing Harley–Davidson trademarks. (Compl. ¶ 10 and at Exh. B ("Nonexclusive Trademark License Agreement Between Harley–Davidson Motor Company, Inc. And Cycle City, Ltd."), hereinafter "License Agreement".) Under the License Agreement, Cycle City sold products bearing Harley–Davidson's trademarks to dealers in its dealer network and to independent third party retailers. (Compl. ¶ 10.) According to Cycle City, its ability to manufacture and sell products under the License Agreement is a significant form of marketing, advertising, and promotion of the brand as well as a significant source of income. (Id.)

Cycle City alleges that, through the course of its relationship with Harley–Davidson, it "has invested millions of dollars and countless hours towards the development of the Harley–Davidson brand and goodwill, the development of the Harley–Davidson dealer network, and the operation of Plaintiff's business in Hawaii." (Compl. ¶ 14.) Harley–Davidson now seeks to significantly alter the parties' relationship by not renewing the Distributorship Agreement or the License Agreement. (Compl. ¶¶ 17–19.) According to Harley–Davidson, on July 13, 2013, the Distributorship Agreement expired and was not renewed. (Compl. ¶ 25.) Harley–Davidson also claims it did not renew the License Agreement and it expired by its terms on December 31, 2013. (Compl. ¶ 26; License Agreement, at Amendment No. 1, § 2(b).)

The Complaint alleges that Harley–Davidson's actions in not renewing the Distributorship and License Agreements are an attempt to end Cycle City's role as the distributor in Hawaii and to limit Cycle City's role to that of a dealer. (Compl. ¶ 17.) Cycle City contends that, in doing so, Harley–Davidson aims to recapture for itself the significant benefits now being realized by Cycle City as the Harley–Davidson Hawaii distributor for over the past 48 years. (Compl. ¶ 15.)

According to the Complaint, for several months prior to the Distribution Agreement's July 31, 2013 expiration, Cycle City and Harley–Davidson engaged in negotiations regarding their ongoing relationship which resulted in an impasse. (Compl. ¶¶ 17–25.) Cycle City maintains that de-

spite termination of the parties' written agreements, Harley–Davidson has continued to sell products to Cycle City, but at "significantly and unreasonably" increased prices. (Compl. ¶ 27.) The crux of Cycle City's Complaint is that Harley–Davidson's conduct "contravenes the basic principles of the parties' long standing relationship and violates Hawaii's Motor Vehicle Industry Licensing Act, Haw.Rev.Stat. 437–1 et seq. . . . ." (Compl. ¶ 28.)

Cycle City, Ltd.'s Complaint contains three counts: (1) violation of Hawaii Motor Vehicle Industry Licensing Act, Haw.Rev. Stat. 437–1 et seq. ("HMVILA") for failure to renew the Distributorship Agreement and failure to renew the License Agreement; (2) declaratory relief based on Harley–Davidson's alleged failure to renew the most recent Distributorship Agreement; and (3) breach of the Distributorship Agreement. Counts 1 and 2 are based on the HMVILA. Count 3 is based on the Distributorship Agreement and its implied covenant of good faith and fair dealing.

### STANDARD OF REVIEW

#### I. Motion to Transfer or Dismiss Based on a Forum Selection Clause

Generally, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* —— U.S. ——, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013)(internal quotation marks and quoting citation omitted). Whether the proper vehicle for enforcing a forum selection clause is dismissal under the doctrine of *forum non-conveniens* or transfer pursuant to 18 U.S.C. § 1404(a) depends upon whether the forum selection clause points to a state court or to a federal court. Section 1404(a) allows transfer from a federal court to another court within the federal court system. *See id.* at 580. Where

the forum selection clause points to a state court, the proper remedy is dismissal for *forum non conveniens* and not transfer pursuant to 18 U.S.C. § 1404(a). *Id.* (citations omitted) (where the forum selection clause points to a state court and "the appropriate way to enforce such a clause is through the doctrine of forum non conveniens, making dismissal the only possible remedy."). Where a party moves to transfer based on a forum selection clause that points to a state court, the court will treat the party's motion to transfer as a motion to dismiss.

A motion to dismiss based on a forum-selection clause is treated as a Rule 12(b)(3) motion to dismiss for improper venue. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996). The pleadings need not be accepted as true and the court may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137 (9th Cir.2004) (citing *Richards v. Lloyd's of London,* 135 F.3d 1289, 1292 (9th Cir.1998) and *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996)).

#### II. Motion to Dismiss Based on Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be granted." *Salmon Spawning & Recovery Alliance v. Gutierrez,* 545 F.3d 1220, 1225 (9th Cir.2008). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. Rule 8(a)(2). Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009)(quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." The factual allegations in a pleading "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

A complaint survives a motion to dismiss when it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). A claim is facially plausible when the factual content of the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard does not require probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party. *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). The Court need not accept as true, however, allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010)(documents attached to the complaint and matters of public record may be considered on a motion to dismiss).

## ANALYSIS

### I. Defendant's Motion to Transfer Case is Denied

Harley–Davidson moves to transfer the case to Wisconsin based on the following clause in Section 19.3 of the Distributorship Agreement:

> This Agreement shall be governed and construed in accordance with the laws of the State of Wisconsin .... [Harley–Davidson] and [Cycle City] hereby submit to the exclusive jurisdiction of the courts of State of Wisconsin. Any applicable state motor vehicle statute governing the relationship between [Harley–Davidson and Cycle City] shall be controlling in the event of a conflict between any provision of this Agreement and the state statute.

(Distributorship Agreement § 19.3, Ex. A to Compl., ECF No. 1.)

 The usual analysis under 28 U.S.C. § 1404(a) or for *forum non conveniens* requires the Court to "evaluate both the convenience of the parties and various public-interest considerations" and "weigh the relevant factors and decide whether, on balance, a transfer [or dismissal] would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co.,* 134 S.Ct. at 581 (citing 18 U.S.C. § 1404(a)). "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581, n. 6 (citations and quotations omitted). Generally, however, "a valid forum-selection clause [should be] given controlling weight

in all but the most exceptional cases." *Id.* at 581 (internal quotation marks and quoting citation omitted). When there is a valid forum selection clause, "the plaintiff's choice of forum merits no weight", "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted"; and the "court ... deem[s] the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 582.

### A. *Section 19.3 of the Distribution Agreement*

■ The parties do not dispute the existence of a valid forum selection clause, but rather, advocate for different interpretations of that clause. Under Section 19.3 of the Distributorship Agreement, the parties agreed to Wisconsin law and "the exclusive jurisdiction of the courts of State of Wisconsin." [1] But that clause is followed by a third sentence in Section 19.3 which states that "[a]ny applicable state motor vehicle statute governing the relationship between [Harley–Davidson and Cycle City] shall be controlling in the event of a conflict between any provision of this Agreement and the state statute." This means that Hawaii's applicable state motor vehicle statute—the Hawaii Motor Vehicle Industry Licensing Act ("HMVILA")—shall be controlling in the event of a conflict between it and any provision of the Distributorship Agreement.

Haw.Rev.Stat. Section 437–28.5(b) of the HMVILA conflicts with the first sentence of Section 19.3 providing for exclusive jurisdiction in the state of Wisconsin. Under Haw.Rev.Stat. Section 437–28.5(b), venue is proper in the Hawaii Federal District Court. Haw.Rev.Stat. Section 437–28.5(b) provides:

> Notwithstanding the terms, provisions, or conditions of any dealer or distributor agreement, franchise, or waiver and notwithstanding any other legal or administrative remedies available, any person who is licensed under this chapter and whose business or property is injured by a violation of section 437–28(a)(21) or part II may bring a civil action in a court of competent jurisdiction in the State to enjoin further violations and to recover any damages together with the costs of the suit. Laws of the State of Hawaii shall apply to any action initiated under this subsection.

Haw.Rev.Stat. § 437–28.5(b).

Section 19.3 of the parties' Distribution Agreement providing for exclusive jurisdiction in the state of Wisconsin also conflicts with Haw.Rev.Stat. Section 437–52(1). Haw.Rev.Stat. Section 437–52(1) of the HMVILA, like Haw.Rev.Stat. Section 437–28.5(b), addresses venue with regard to agreements between manufacturers/distributors and dealers and prohibits the type of forum selection clause that is contained in the parties' Distribution Agreement.[2] Haw.Rev.Stat. Section 437–52(1) provides:

> A manufacturer or distributor shall not: (1) Require any dealer in the State to enter into any agreement with the manufacturer or distributor or any other party that requires the law of another

---

1. In *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081–82 (9th Cir.2009), the court construed similar language—referring to "the courts of Virginia"—to mean state courts, as opposed to federal courts. Where the forum selection clause refers to a state court, dismissal, and not transfer, is the appropriate remedy. The Court construes Defendant's Motion to Transfer under 18 U.S.C. § 1404(a) as a motion to dismiss based on *forum non conveniens* grounds.

2. The Court addresses Harley–Davidson's argument under the Contract Clause of the United States Constitution below.

jurisdiction to apply to any dispute between the dealer and manufacturer or distributor, or requires that the dealer bring an action against the manufacturer or distributor in a venue outside of Hawaii, or requires the dealer to agree to arbitration or waive its rights to bring a cause of action against the manufacturer or distributor, unless done in connection with a settlement agreement to resolve a matter or pending dispute between a manufacturer or distributor, or officer, agent, or other representative thereof, and the dealer; provided, however, that such agreement has been entered voluntarily for adequate and valuable consideration; and provided further that the renewal or continuation of a franchise agreement shall not by itself constitute adequate and valuable consideration;

Haw.Rev.Stat. § 437–52(1).

 When considering a forum selection clause, the "plain language of the contract should be considered first with the understanding that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." *Simonoff v. Expedia, Inc.,* 643 F.3d 1202, 1205 (9th Cir.2011) (internal citations and quotations omitted). The last sentence of Section 19.3 is broadly worded. It provides that any applicable state motor vehicle statute governing the relationship between Harley–Davidson and Cycle City shall be controlling in the event of a conflict. This includes any conflict between the selection of Wisconsin as the exclusive forum in Section 19.3 and the provisions relating to venue in the HMVILA. Under Section 19.3's express language, because the selection of Wisconsin as the exclusive forum conflicts with Haw.Rev.Stat. Sec-

tions 437–28.5(b) and 437–52(1), the provisions of the HMVILA control.

The decisions in *Caribbean Rests., LLC v. Burger King Corp.,* 23 F.Supp.3d 70 (D.P.R.2014) and *Rolfe v. Network Funding LP,* No. 14–9, 2014 WL 2006756, 2014 U.S. Dist. LEXIS 67476 (W.D.Wis. May 16, 2014) are distinguishable. The courts in those cases enforced valid forum selection clauses despite state dealer/distributor protection statutes invaliding such clauses. But there, the forum selection clauses at issue did not contain a sentence similar to the last sentence in Section 19.3. The Court is interpreting the forum selection clause as written in this case. In this case, the forum selection clause specifically incorporates the HMVILA.

The parties' forum selection clause points to Hawaii as the proper forum. Because Plaintiff's decision to file in Hawaii is in accord with the parties' forum selection clause, the factors identified by the Supreme Court in *Atlantic Marine* to determine whether a plaintiff can file in a forum other than that chosen by the parties by contract are inapplicable.

### 1. *Application of Haw.Rev.Stat. Section 437–52(1) Does Not Violate the Contract Clause*

Haw.Rev.Stat. Section 437–28.5(b), which allows any person licensed under the Hawaii Motor Vehicle Industry Licensing Act to bring a civil action in a court of competent jurisdiction in Hawaii regardless of the terms of any dealer or distributorship agreement, was enacted prior to the parties 2008 Distribution Agreement. Haw.Rev.Stat. Section 437–52(1), which prohibits a manufacturer or distributor from requiring a dealer to enter into an agreement that requires the dealer to bring an action against a manufacturer or distributor in a venue outside of Hawaii, was not enacted until 2010. As such, Harley–Davidson argues that retroactively ap-

plying Haw.Rev.Stat. Section 437–52(1) to the parties' Distribution Agreement to alter the forum selection clause violates the Contracts Clause of the United States Constitution. The Contract Clause of the U.S. Constitution states, "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I § 10, cl. 1.

### a. Contract Clause Analysis

 Whether a regulation violates the Contract Clause is governed by a three-step inquiry. The first inquiry concerns "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir.2004) (internal quotations omitted). This threshold inquiry has three components, the first being "whether there is a contractual relationship." *Id.* (internal quotations omitted). This component goes not just to whether there is any contractual relationship between the parties, but to whether there is a "contractual agreement regarding the specific ... terms allegedly at issue." *Romein*, 503 U.S. at 187, 112 S.Ct. 1105. The second component looks at whether a change in the law impairs that contractual relationship. The third component concerns whether the impairment is substantial. *Id.* at 186, 112 S.Ct. 1105.

 If this three-component threshold inquiry results in a finding that a law has substantially impaired a contractual relationship, the court turns to the second inquiry, which concerns whether "the State, in justification, has a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *RUI One Corp.*, 371 F.3d at 1147 (brackets and citations omitted).

 The final inquiry concerns "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id.* (quotations omitted). Where a state is not a party to the contract, a court employs less scrutiny in addressing the third inquiry. *See id.* at 1152 (noting that courts apply decreased deference for self-interested government acts only upon reaching the third part of the Contract Clause analysis).

### b. Application of Contract Clause Analysis

 The first inquiry is whether the Hawaii Motor Vehicle Industry Licensing Act, Section 437–52(1) has operated as a substantial impairment to the parties' contractual relationship. In this case, the parties' Distributorship Agreement constitutes a contractual relationship. The change in law, the addition of Haw.Rev. Stat. Section 437–52(1), impairs that contractual relationship by adding a venue requirement that is different from the venue selected by the parties in the Distributorship Agreement. In particular, Section 19.3 provides for exclusive jurisdiction in the State of Wisconsin and Haw.Rev.Stat. Section 437–52(1) prohibits such provisions. The impairment, however, is not substantial. "An impairment of a contract is substantial if it deprives a private party of an important right, thwarts performance of an essential term, defeats the expectations of the parties, or alters a financial term." *HRPT Properties Trust v. Lingle*, 715 F.Supp.2d 1115, 1136 (D.Haw. 2010) (citing *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003)). Here, Harley–Davidson and Cycle City freely contracted, in Section 19.3, for application of the HMVILA and application of it does not defeat the parties' ex-

pectations. In light of Section 437–28.5(b), which existed at the time of the parties 2008 Distributorship Agreement, Harley–Davidson cannot claim surprise that it is a party to a civil action in a Hawaii court. Section 437–28.5(b) allows civil actions in Hawaii courts "[n]otwithstanding the terms, provisions or conditions of any dealer or distributorship agreement ...." Haw.Rev.Stat. § 437–28.5(b).

Because the Court finds that Section 437–52(1) does not substantially impair the parties' contractual relationship, it need not consider the second and third inquiries of the Contract Clause analysis. Retroactive application of Haw.Rev.Stat. Section 437–52(1) does not violate the Contract Clause.

### B. *Public Interest Factors*

■ Even if, as Harley–Davidson contends, Wisconsin remains the agreed upon forum despite its conflict with the HMVILA, Cycle City has shown that the public interest factors overwhelmingly weigh against dismissal from the Hawaii District Court. The public interest factors under the *forum non conveniens* analysis weigh in favor of maintaining the action in this Court. There is a strong local interest in having the parties' dispute resolved in Hawaii. Cycle City has operated as Harley–Davidson's exclusive distributor in Hawaii for 48 years and the facts giving rise to the lawsuit took place in Hawaii. The HMVILA expresses a strong public policy in favor of resolving these types of disputes in Hawaii and the crux of Cycle City's Complaint is for violation of that law. *See* Haw.Rev.Stat. §§ 437–1, 437–41; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir.2000) (California statute expressed a strong public policy to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue, precluding en-

forcement of forum selection clause requiring litigation in Pennsylvania). The Court's familiarity with Hawaii law also weighs in favor of maintaining the action here.

For these reasons, Harley–Davidson's Motion to Transfer Case (ECF No. 28), which the Court construes as a motion to dismiss on *forum non conveniens* grounds, is **DENIED.**

### II. *Defendant's Motion to Dismiss is Granted in Part and Denied in Part*

Cycle City, Ltd.'s Complaint contains three counts: **Count I:** Violation of the Hawaii Motor Vehicle Industry Licensing Act, Haw.Rev.Stat. § 437–1 *et seq.* ("HMVILA"); **Count II:** Declaratory relief under the HMVILA; and **Count III:** Breach of the Distributorship Agreement.

Harley–Davidson moves to dismiss all three counts.

### *Count I—Violation of the Hawaii Motor Vehicle Industry Licensing Act, Haw. Rev.Stat. § 437–1, et seq. ("HMVILA")*

In Count I, Cycle City cites Haw.Rev. Stat. Sections 437–28(a)(21), 437–28.5 of the HMVILA (Compl. ¶¶ 35, 37, 38) and alleges that Harley–Davidson has violated the HMVILA by failing to renew the Distributorship Agreement upon its expiration on July 12, 2013, and by failing to renew the License Agreement. (Compl. ¶ 40.) According to the Complaint, Harley–Davidson wishes to take over Cycle City's distributorship in Hawaii after Cycle City's decades of hard work building a customer base, good will, and a dealership network. (Compl. ¶¶ 14–17.) Cycle City contends that, in its efforts to push Cycle City out of its distributorship role, Harley–Davidson has acted maliciously and in bad faith. (Compl. ¶¶ 23, 24, 27.) According to Cycle City, in violation of its good faith obligations under the HMVILA, Harley–Davidson has significantly and unreason-

ably increased wholesale prices charged to Cycle City for products; threatened, for the first time, to confront Cycle City with alleged breaches of the Distributorship Agreement; and offered to renew the License Agreement only if Cycle City accepted termination of the Distributorship Agreement. (Compl. ¶¶ 19, 27.)

### Count II: Declaratory Relief under the HMVILA

Count II, Cycle City's declaratory relief claim, is based primarily on Harley–Davidson's failure to renew the Distributorship Agreement in violation of the HMVILA. (Compl. ¶ 43.) Cycle City seeks a declaration as to its rights under the Distributorship Agreement and the HMVILA. Cycle City contends that it has the right to a renewed distribution agreement for an additional five year term under the same terms and conditions under which the parties operated for the past five years. (Compl. ¶¶ 45, 46.) Cycle City also seeks a declaration that the Distributorship Agreement and the HMVILA preclude Harley–Davidson from unreasonably increasing the prices it charges Cycle City for products. (Compl. ¶ 47.) Harley–Davidson, on the other hand, takes the position that it has the right not to renew the Distribution Agreement. (Compl. ¶ 44.)

### Count III: Breach of the Distributorship Agreement

In Count III, Cycle City alleges that Harley–Davidson has failed to renew the Distributorship Agreement and has unreasonably increased prices in breach of its implied covenant of good faith and fair dealing. (Compl. ¶¶ 50, 51.) Section 15.1 of the Distributorship Agreement addresses termination of the Distributorship Agreement. Cycle City contends that Section 15.1 is unlawful because it allows the Distributorship Agreement to automatically expire without any notice or prior action. Section 15.1 states, in relevant part:

"this Agreement shall continue for a term ending on July 31, 2013. Upon the end of the term, this Agreement shall automatically expire without any notice or prior action." (Distributorship Agreement, § 15.1.)

Cycle City further contends that Harley–Davidson materially breached Section 9.5 of the Distribution Agreement and the implied covenant of good faith and fair dealing by unreasonably increasing its prices for products. Section 9.5 pertains to prices, charges, and terms of purchase for products sold by Harley–Davidson to Cycle City under the Distributorship Agreement. Section 9.5 requires Harley–Davidson to notify Cycle City of prices, charges, and terms of purchase and provides, in part: "Such prices, charges and terms shall be [Harley–Davidson's] standard Distributor prices, charges and terms for the Territory as established by [Harley–Davidson]." (Distributorship Agreement, § 9.5.) Cycle City alleges that Harley–Davidson breached this provision by maliciously, arbitrarily and capriciously increasing the prices under which Cycle City purchases products from Harley–Davidson for sale in Hawaii. (Compl. ¶ 53.) Cycle City contends that Harley–Davidson has unreasonably increased prices in bad faith and in order to force Cycle City to relinquish its rights under the Distributorship Agreement and the HMVILA. (Id.)

### Harley–Davidson's Motion to Dismiss

In its Motion to Dismiss, Harley–Davidson groups Cycle City's claims factually, into "failure to renew" claims and "price increase" claims. (Motion at p. 8.) The question is whether Cycle City has adequately alleged claims that Harley–Davidson's conduct violates the HMVILA and/or constitutes a breach of the parties' agreements.

## A. Allegations Regarding Failure to Renew

All counts of the Complaint are based, in part, on Cycle City's factual allegation that Harley–Davidson failed to renew the Distributorship Agreement. Indeed, Cycle City's chief complaint in this action is that Harley–Davidson has failed to renew the Distribution Agreement with the prior favorable terms. (*See* Compl. at p. 22.) In determining whether Cycle City has stated claims for relief, the threshold question is whether Harley–Davidson could be legally liable for failing to renew the Distribution Agreement based on the facts alleged.

Cycle City alleges that Harley–Davidson had a good faith obligation to renew the Distributorship Agreement under the HMVILA and under the Distribution Agreement, in particular, the implied covenant of good faith and fair dealing. Before addressing whether there is a sufficient legal basis for Cycle City's failure to renew claims, however, the Court considers Harley–Davidson's contention that, taking Cycle City's factual allegations as true, Harley–Davidson has continued to do business with Cycle City and it, therefore, cannot be in violation of the HMVILA or the Distribution Agreement for non-renewal.

### 1. Whether the Parties' Alleged Conduct Constitutes Renewal of the Distribution Agreement

The Hawaii Motor Vehicle Industry Act does not define the term "renewal". The Complaint consistently alleges that Harley–Davidson has failed to renew the Distribution Agreement and seeks a declaration that Harley–Davidson be required to renew the Distribution Agreement on the same terms and conditions as in the 2008 agreement. (Compl. at p. 22.) Cycle City

alleges that the parties have continued to do business (Compl. ¶ 27), but that the parties have not entered into a new agreement. Harley–Davidson argues that because the parties have continued to do business, Cycle City cannot state a claim for non-renewal. Cycle City has not failed to state a non-renewal claim simply because it alleges that the parties have continued to do business and *argues,* in opposition, that the parties' conduct gives rise to an implied-in-fact contract.[3] (Opp. at p. 15.) A continued relationship in another form, such as by implied-in-fact contract, is not the same as a written distributorship agreement. Harley–Davidson's argument also ignores the question of whether Cycle City, as alleged, has the right to a renewed Distributorship Agreement under the same terms as the prior agreement. Central to Cycle City's case is its claim that Harley–Davidson has unreasonably increased the prices it charges Cycle City for products and that Cycle City has the right to a new distribution agreement on the same terms as the prior agreement.

### 2. Good Faith Obligation to Renew Based on the HMVILA

#### a. Violation of Haw.Rev.Stat. Section 437–28(a)(21)

The Hawaii Motor Vehicle Industry Licensing Act ("HMVILA") applies to the manufacture, distribution, and sales of motor vehicles in Hawaii. Haw.Rev.Stat. § 437–1. Under the HMVILA, Cycle City is a distributor and dealer and Harley–Davidson is a manufacturer. Haw. Rev. Sat. § 437–1.1. The primary basis for Cycle City's argument that Harley–Davidson had a good faith obligation to renew the Distributorship Agreement is Haw.Rev.

---

**3.** In its opposition, Cycle City argues that since expiration of the Distribution Agreement, the parties have been acting pursuant to an implied-in-fact contract. Cycle City

does not allege the existence of an implied-in-fact contract in the Complaint. If Cycle City wishes to pursue such a claim, it would need to amend its Complaint to state one.

Stat. Section 437–28(a)(21) of the HMVI-LA, in particular subsections (A) and (C). (Compl. ¶ 35; Opp. at pp. 13–14.) Under Haw.Rev.Stat. Sections 437–28(a)(21)(A) and (C), a manufacturer, such as Harley–Davidson, cannot attempt to force a dealer to accept certain terms by threatening not to renew the distributorship agreement and cannot fail to renew the distributorship agreement without good faith. Those sections provide that it is a violation of the HMVILA if a manufacturer or distributor:

(A) Has required any dealer in the State to enter into any agreement with the manufacturer or distributor or any other party, to perform any act not required by or to refrain from performing any act not contrary to the reasonable requirements of the franchise agreement with the dealer, by threatening to cancel the franchise agreement or by threatening to refuse, at the expiration of the current franchise agreement, to enter into a new franchise agreement with the dealer;

\* \* \*

(C) Has canceled or failed to renew the franchise agreement of any dealer in the State without good faith, as defined herein. As used in this subparagraph, "good faith" means the duty of each party to any franchise agreement to fully comply with that agreement, or to act in a fair and equitable manner towards each other;

Haw.Rev.Stat. § 437–28(a)(21)(A), (C).

There are no Hawaii state court cases directly on point. In interpreting a stat-ute, the court first looks to its plain language. *See Awakuni v. Awana,* 115 Hawai'i 126, 165 P.3d 1027, 1033–34 (2007).

### i. *Haw.Rev.Stat. Section 437–28(a)(21)(A)*

By its plain language, Haw.Rev.Stat. Section 437–28(a)(21)(A) pertains to negotiations between a manufacturer and dealer regarding the terms of their franchise agreement. It prohibits a manufacturer from using the threat of cancellation or non-renewal to force a dealer to agree "to perform an act not required by or to refrain from performing an act contrary to the reasonable requirements of the [parties'] franchise agreement . . . ." Put another way, a manufacturer cannot force a dealer to enter into an agreement that deviates (by requiring performance of a new act or prohibiting a previously permitted act) from the parties' franchise agreement by threatening to cancel or not renew the parties' franchise agreement. In paragraphs 22–24 of the Complaint, Cycle City quotes, at length, from a July 3, 2013 letter from Mr. St. Thomas, the Director of Fleet Sales and Distribution Markets for Harley–Davidson, to Cycle City regarding termination of the Distributorship Agreement.[4] (Opp. at p. 14.) Approximately 4 months prior, on March 12, 2013, Mt. St. Thomas sent a letter to Cycle City advising it of Harley–Davidson's intent to terminate the Distributorship Agreement through non-renewal. (Compl. ¶¶ 17–19.) "[L]engthy discussions regarding the termination of the Distributorship Agree-

---

4. Harley–Davidson has attached a copy of the letter as Exhibit A to its Reply. The letter is dated July 8 and not July 3. The contents of the letter otherwise conform to Cycle City's factual allegations in paragraphs 22–24 of the Complaint. The Court may consider the letter on a motion to dismiss, without converting it to summary judgment, because the letter is referenced in the Complaint. *See U.S. v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir.2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.")

ment, and the ways in which the parties could work together in the future" ensued. (Compl. ¶ 21.) In the July 2013 letter, Harley Davidson set forth its required terms for any new agreement (Compl. ¶¶ 22–23), reiterated that it was "open to considering any reasonable alternatives" to achieve its goal of direct distribution, but made clear that renewal of the existing Distributorship Agreement was "unacceptable". (Compl. ¶ 24.)

 The Court finds that these allegations are sufficient to state a claim under Haw.Rev.Stat. Section 437–28(a)(21)(A). Cycle City has sufficiently alleged that Harley Davidson threatened to allow the Distributorship Agreement to expire if Cycle City would not agree to substantial changes to the parties' business relationship.

### ii. *Haw.Rev.Stat. Section 437–28(a)(21)(C)*

 Haw.Rev.Stat. Section 437–28(a)(21)(C), by its plain language, requires a manufacturer to act in good faith in cancelling or failing to renew a franchise agreement. Cycle City alleges that Harley Davidson acted in bad faith by failing to renew the Distributorship Agreement and, instead, "demanding that Cycle City consent to the ultimate termination of the distribution model under which the parties have operated for over 48 years." (Compl. ¶ 40; *see also* Compl. ¶¶ 22–24.) Cycle City further alleges that "Harley–Davidson has significantly and unreasonably increased the wholesale prices charged Cycle City for Products in a malicious, capricious, and bad-faith effort to financially squeeze Cycle City and to force it to accept the ultimate termination of the Distributorship agreement and business model that has existed between the parties for over 48 years." (Compl. ¶ 27.) Haw. Rev.Stat. Section 437–28(a)(21)(C) defines "good faith" as "the duty of each party to any franchise agreement to fully comply with that agreement, or to act in a fair and equitable manner towards each other".

Cycle City's allegations support its claim that Harley–Davidson has not acted in a fair and equitable manner. Cycle City has thus sufficiently alleged that Harley–Davidson failed to renew the Distributorship Agreement in good faith.

In sum, Cycle City has alleged sufficient facts to state a claim for violation of the HMVILA, in particular, Haw.Rev.Stat. Section 437–28(a)(21)(A) and (C), based on non-renewal of the Distributorship Agreement.

### b. *Violation of Haw.Rev.Stat. Sections 437–52 and 437–58*

 In addition to its claims based on Haw.Rev.Stat. Section 437–28(a)(21)(A) and (C), Cycle City argues that it has sufficiently pled a violation of Sections 437–52 and 437–58. Haw.Rev.Stat. Section 437–52(3) pertains to the cancellation or failure to renew franchise agreements. That section prohibits a manufacturer or distributor from canceling or failing to renew a franchise agreement without providing notice, and without good cause and good faith. Haw.Rev.Stat. Section 437–52(3) provides, in part:

> A manufacturer or distributor shall not: (3) Cancel or fail to renew the franchise agreement of any dealer in the State without providing notice, and without good cause and good faith, as provided in section 437–58;

Haw.Rev.Stat. § 437–52(3).

Haw.Rev.Stat. Section 437–52(3) references Section 437–58. That section sets forth procedures that a manufacturer or distributor seeking to terminate a franchise agreement must follow. Haw.Rev. Stat. Section 437–58 provides, in part:

(a) A manufacturer or distributor shall give written notice to the dealer and the board of the manufacturer's intent to terminate, discontinue, cancel, or fail to renew a franchise agreement at least sixty days before the effective date thereof, and state with specificity the grounds being relied upon for such discontinuation, cancellation, termination, or failure to renew;

\* \* \*

(b) A dealer who receives notice of intent to terminate, discontinue, cancel, or fail to renew may, within the sixty-day notice period, file a petition in the manner prescribed in section 437–51 for a determination of whether such action is taken in good faith and supported by good cause. The manufacturer or distributor shall have the burden of proof that such action is taken in good faith and supported by good cause.

Haw.Rev.Stat. § 437–58(a),(b).

### iii. *Sufficiency of Pleading*

Count I of the Complaint cites Haw.Rev. Stat. Section 437–28.5(a) which states: "[t]he same procedures, protections, rights, and remedies provided to a dealer under section 437–3.6, section 437–28(a)(21), and *part II* shall apply to a distributor that is not a manufacturer." Haw.Rev.Stat. § 437–28.5 (emphasis added). Cycle City contends that Haw.Rev. Stat. Sections 437–52 and 437–58 are the two pertinent sections of part II and that the same facts that support its Section 437–28(a)(21) claim also make out a claim under Sections 437.52 and 437.58. (Opp. at pp. 20–21.)

The Court finds that Cycle City has not sufficiently alleged violation of Sections 437.52 and 437.58. Those sections are not mentioned anywhere in the Complaint. Cycle City does not mention them until its Opposition. While Cycle City may have intended to allege a violation of those Sections, it has not done so. A complaint must sufficiently put the defendant on fair notice of the claim asserted and the ground upon which it rests. As the court in *White v. Indymac Bank, FSB,* No. CV 09–00571 DAE–KSC, 2011 WL 1483928, at \*4 (D.Haw. April 18, 2011) stated:

> Although Rule 8 requires only that a complaint include a 'short and plain statement of the claim showing that the pleader is entitled to relief,' the complaint must sufficiently put Defendants on fair notice of the claim asserted and the ground upon which it rests. Defendants, nor the Court, are required to speculate as to which provisions Plaintiff is suing under or how Defendants violated such provisions.

*Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *see also Rosal v. First Federal Bank of California,* 671 F.Supp.2d 1111, 1125 (N.D.Cal.2009) (accord).

### iv. *Retroactive Application of Haw.Rev.Stat. Sections 432–52(3) and 432–58*

The Court turns to the parties' arguments as to whether retroactive application of Haw.Rev.Stat. Sections 437–52(3) and 437–58 is constitutional under the Contract Clause of the U.S. Constitution. If unconstitutional, granting leave to amend would be futile. Both Sections were effective as of July 1, 2010. *See* 2010 Haw. Sess. Laws 164. The relevant provisions of both Sections govern the cancellation and non-renewal of franchise agreements. From their plain language, Haw. Rev.Stat. Sections 437–52(3) and 437–58 would apply to existing franchise agreements.

Harley–Davidson argues that retroactive application of the requirements of those sections to the 2008 Distribution Agreement violates the Contract Clause of the

U.S. Constitution. (Reply at p. 8.) The three-step inquiry for determining whether a statute violates the Contract Clause is set forth above.

### a. *Application of Contract Clause Analysis*

### i. *Haw.Rev.Stat. Sections 437–52(3) and 437–58 Substantially Impair the Parties' Contractual Relationship*

█ The first inquiry is whether the Hawaii Motor Vehicle Licensing Act, Sections 437–52(3) and 437–58, have operated as a substantial impairment to the parties' contractual relationship. In this case, the parties' Distributorship Agreement constitutes a contractual relationship. The change in law, the addition of Haw.Rev. Stat. Sections 437–52(3) and 437–58, impairs that contractual relationship. In particular, Section 15.1 of the Distribution Agreement allows for automatic termination of the agreement and Haw.Rev. Stat. Sections 437–52(3) and 437–58 impose additional requirements on a manufacturer or distributor seeking to terminate or not renew a franchise agreement. The contract is substantially affected because the provisions deprive Harley–Davidson of its right to automatically terminate the agreement. Under Haw.Rev.Stat. Section 437–58, Harley–Davidson must provide notice of its decision not to renew and also has the burden of proving that its action "is taken in good faith and supported by good cause." Haw.Rev.Stat. § 437–58(b).

### ii. *State Has a Significant and Legitimate Public Purpose*

Because the Court finds that Haw.Rev. Stat. Sections 437–52(3) and 437–58 substantially impair the parties' contractual relationship, it turns to the second inquiry. The second inquiry concerns whether the State has a legitimate public purpose behind the regulation that justifies the substantial contractual impairment. The Court finds that the State has a significant and legitimate public purpose in regulating the termination and non-renewal of franchise agreements. In enacting the Hawaii Motor Vehicle Industry Licensing Act, the legislature recognized that the sale of motor vehicles is vital to the State's economy and that Hawaii's isolated geographic location makes it necessary to ensure that motor vehicles, parts, and dependable service are available within the State. This public purpose is stated at the beginning of the HMVILA:

(1) The manufacture, distribution, and sales of motor vehicles in the State vitally affects the general economy of the State and the public interest and public welfare;

(2) Manufacturers of motor vehicles without physical manufacturing facilities within the State and motor vehicle distributors doing business in the State through their control over, and relationships and transactions with their dealers, branches, and representatives; and

(3) The geographical location of Hawaii makes it necessary to ensure that motor vehicles, parts and dependable service are available within the State to protect and preserve the transportation system and the investments of its residents.

Haw.Rev.Stat. § 437–1. The legislature went on to specifically find that "this chapter is remedial and shall apply to all franchise agreements existing as of the date of enactment, except to the extent that such application violates any provision of the state or federal constitutions." *Id.*

Central to the Court's inquiry under the Contract Clause is whether the parties are operating in an already heavily regulated industry. If so, this factor weighs in favor of retroactive application. *See Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 459 U.S. 400, 413, 103 S.Ct. 697,

74 L.Ed.2d 569 (1983) (upholding a Kansas act partly due to "the fact that the parties [were] operating in a heavily regulated industry."); *see also Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark,* 310 U.S. 32, 37, 60 S.Ct. 792, 84 L.Ed. 1061 (1940) (upholding a New Jersey statute after noting it was part of a long series of regulations dating back almost 30 years). The Hawaii motor vehicle industry has been regulated in Hawaii for over ten years. Indeed, similar provisions of the HMVILA, such as Section 437–28.5, existed at the time the parties entered into their most recent Distribution Agreement.

Retroactive application of provisions of the HMVILA is in accord with the parties' reasonable expectations. The Distribution Agreement, in Section 19.3, recognizes the existence and importance of applicable motor vehicle statutes, such as the HMVILA. Section 19.3 provides that any applicable motor vehicle statute—here, the HMVILA—shall be controlling in the event of a conflict between a provision of the Distributorship Agreement and a provision of that statute. The United States Supreme Court, in *Energy Reserves Group, Inc.,* considered similar contract language. The contract at issue there "recogniz[ed] the existence of extensive regulation by providing that any contractual terms are subject to relevant present and future state and federal law." *Energy Reserves Group, Inc.,* 459 U.S. at 416, 103 S.Ct. 697. The *Energy Reserves Group, Inc.* Court concluded that such language weighed in favor of retroactive application because the contracting parties' reasonable expectations could not have been impaired by application of the law. *Id.* Here, as in *Energy Reserves Group, Inc.,* in light of the extensive regulatory scheme, the parties knew, or should have known, that their contractual rights were subject to alteration by state law dealing with motor vehicle industry franchise agreements. *See id.*

The State of Hawaii has been regulating the motor vehicle industry and has a significant and legitimate public purpose in doing so.

### iii. *Haw.Rev.Stat. Sections 437–52(3) and 437–58 Are Reasonably Designed to Promote the State's Public Purpose*

The third and final inquiry concerns whether the adjustment of the contracting parties' rights and responsibilities is based on reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. As to this inquiry, the Court finds that the manner in which Haw.Rev.Stat. Sections 437–52(3) and 437–58 adjusts the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Haw.Rev.Stat. Sections 437–52 and 437–58 impose reasonable conditions directly related to the public purposes set forth above. " '[A]s is customary in reviewing economic and social regulation, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' " *Energy Reserves Group, Inc.,* 459 U.S. at 412–413, 103 S.Ct. 697 (quoting *United States Trust Co. v. New Jersey,* 431 U.S. 1, 22–23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)); *see Morseburg v. Balyon,* 621 F.2d 972, 979 (9th Cir.1980) ("The degree to which a state may impair the obligations of contract varies with the public need for that impairment.") (citation omitted). The imposition of conditions on termination and non-renewal of franchise agreements goes directly to the public purpose stated in Section 437–1(3) because it "ensure[s] that motor vehicles, parts and dependable service are available within the State to protect and preserve the transportation system and the investments of its residents."

The Court is unpersuaded by the cases cited by Harley–Davidson. *Pascale Service Corp. v. International Truck and Engine Corp.,* 558 F.Supp.2d 217, 220 (D.R.I. 2008) involved a notice provision under the Rhode Island Fair Dealership Act that is analogous to the notice provision in Section 437–58 and which the court declined to apply retroactively. *Pascale Service Corp.* is factually distinguishable. In that case, unlike here, the manufacturer first provided the dealer with notice of its intent to terminate on April 9, 2007, but the Rhode Island Fair Dealership Act did not come into effect until June 14, 2007. *Id.* at 219. The Court is also unpersuaded by the Eight Circuit case law cited by Harley–Davidson finding that the Iowa Franchise Act did not apply retroactively. As recognized by the Hawaii legislature, Hawaii's geographic location makes it unique, particularly with regard to the purchase and sale of imported goods.

For these reasons, the Court finds that retroactive application of the requirements of Haw.Rev.Stat. Sections 437–52(3) and 437–58 does not violate the Contract Clause.

Accordingly, Cycle City is **GRANTED LEAVE TO AMEND** to allege claims based on violation of Haw.Rev.Stat. Sections 437–52(3) and 437–58 of the HMVI-LA.

### 3. *Good Faith Obligation to Renew Based On Distributorship Agreement*

Count III is based on Harley–Davidson's alleged good faith obligation to renew the Distributorship Agreement under its implied covenant of good faith and fair dealing. Section 15.1 of the Distributorship Agreement provided for automatic expiration on July 31, 2013 "without any notice or prior action". Plaintiff alleges that Section 15.1 "violates the [HMVILA], which statute controls in the event of a conflict with the Distribution Agreement." (Compl. ¶ 51.)

In considering a claim for breach of an implied duty of good faith, courts look at whether a party acted in such a way as to "deprive the other of the benefits of the agreement." *Young v. Allstate Ins. Co.,* 119 Hawai'i 403, 427, 198 P.3d 666 (Haw.2008) (quoting *Best Place, Inc. v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 123, 920 P.2d 334 (Haw.1996)). The duty of good faith and fair dealing "is to be applied in a manner that will effectuate ... only the objectively reasonable expectations of [the] parties...." *Uyeshiro v. Irongate Azrep BW LLC,* No. Civ. 13–00043 ACK–BM, 2014 WL 1233109, at *7 (D.Haw. March 24, 2014) (quoting *Iron Horse Eng'g Co., Inc. v. Northwest Rubber Extruders, Inc.,* 193 Or.App. 402, 89 P.3d 1249, 1259 (2004)).

The Court finds that, as contemplated by the parties in Section 19.3, the HMVI-LA modifies Section 15.1 of the Distribution Agreement. Section 15.1 allowed for automatic termination of the Distribution Agreement and the HMVILA sets forth specific requirements for non-renewal. Because Section 19.3 states that the HMVILA controls in the event of a conflict, the obligations of that statute are read into the contract. Cycle City is not attempting to use the implied duty of good faith "to create new, independent rights or duties beyond those agreed to by the parties." *Uyeshiro,* 2014 WL 1233109, at *7.

Cycle City has alleged sufficient facts to support its claim, in Count III, that Harley–Davidson breached the Distributorship Agreement by failing to renew it.

### B. *Allegations Regarding Price Increases and Changes to Purchase Terms*

In addition to Harley–Davidson's alleged failure to renew, Counts I and III of the

Complaint contain factual allegations that Harley–Davidson unlawfully and unreasonably increased the prices it charged Cycle City for products. (Compl. ¶¶ 46, 47, 53.) As with Cycle City's failure to renew claims, the question is whether Cycle City has adequately alleged that Harley–Davidson's conduct of "maliciously, arbitrarily and capriciously increas[ing] the prices, charges and terms under which Cycle City purchases Products" (Compl. ¶ 53) violates the HMVILA (Count I) and the Distributorship Agreement (Count III).

### 1. Obligation Under HMVILA Regarding Price Increases and Term Changes

Cycle City's claim for violation of the HMVILA is based on Sections 437–28(a)(21) and 437–28.5. (Compl. ¶¶ 35–38.) Cycle City does not cite a specific provision of the HMVILA to support its claim that Harley–Davidson violated it by unlawfully and unreasonably increasing prices. In contrast to similar state statutes, the HMVILA does not expressly prohibit motor vehicle manufacturers from increasing prices or changing contract terms. *See, e.g.,* Cal. Veh.Code § 3060(b) (prohibiting, without prior notice, agreement modifications that substantially affect a dealer's obligations or investment).

That said, Cycle City's allegations of significant and unreasonable price increases (Compl. ¶ 27) support its bad faith claim under the HMVILA as alleged in Count I. The question of whether Cycle City is entitled to a renewed distributorship agreement based on the same terms as the prior agreement is not before the Court in ruling on Defendant's motion to dismiss.

### 2. Obligation Under Distributorship Agreement Regarding Price Increases and Term Changes

Cycle City contends that Harley–Davidson materially breached Section 9.5 of the Distribution Agreement and the implied covenant of good faith and fair dealing by unreasonably increasing its prices for products. Section 9.5 pertains to prices, charges, and terms of purchase for products sold by Harley–Davidson to Cycle City under the Distributorship Agreement. The first part of Section 9.5 requires Harley–Davidson to notify Cycle City of prices, charges, and terms of purchase and provides, in part: "Such prices, charges and terms shall be [Harley–Davidson's] standard Distributor prices, charges and terms for the Territory as established by [Harley–Davidson]." (Distributorship Agreement, § 9.5.) Under the second part of Section 9.5, Harley–Davidson reserved the right, at any time and without prior notice, to change prices, discounts, charges and terms of purchase. (*Id.*) Cycle City alleges that Harley–Davidson breached Section 9.5 by maliciously, arbitrarily and capriciously increasing the prices under which Cycle City purchases products from Harley–Davidson for sale in Hawaii. (Compl. ¶ 53.) Cycle City contends that Harley–Davidson has unreasonably increased prices in bad faith and in order to force Cycle City to relinquish its rights under the Distributorship Agreement and the HMVILA. (*Id.*) Harley–Davidson argues that Cycle City's claim fails as a matter of law because Harley–Davidson reserved the right to change prices at any time and without notice.

 Section 9.5 affords Harley–Davidson limited discretion with regard to price changes. The first part of Section 9.5 provides that standard pricing shall apply. Later in Section 9.5, Harley–Davidson reserved the right to change prices, but, in doing so, it was obligated to act in good faith. When an express contract provision allows a party to exercise some discretion, that party is obligated to exercise its discretion in good faith. *See Damabeh v. 7–Eleven, Inc.,* No. 12–CV–1739–LHK, 2013

WL 1915867, at *6 n. 4 (N.D.Cal. May 8, 2013) ("Allegations that Defendant exercised its discretion in bad faith might support a cause of action for the breach of good faith and fair dealing. *See e.g. Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal.4th 342, 372, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) ('The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.')").

Cycle City has stated a claim for breach of the Distribution Agreement, in Count III, based on Harley–Davidson's alleged price increases and term changes.

### C. Cycle City Has Alleged Insufficient Facts to State a Claim for Violation of the HMVILA Based on the License Agreement

Cycle City alleges that Harley–Davidson's failure to renew the License Agreement violates the HMVILA. (Compl. ¶ 40.) Cycle City also alleges that Harley–Davidson offered to renew the License Agreement if Cycle City would accept termination of the Distribution Agreement and that "[s]uch offer to reinstate the License Agreement serves to prove that there is no legitimate business reason not to renew the License Agreement except to be able to use it as a carrot to seduce Cycle City to voluntarily terminate its Distributorship Agreement." (Compl. ¶ 26.) Under the License Agreement, Cycle City had the right to manufacture, distribute, promote, and sell articles with Harley–Davidson's "Licensed Marks" in a defined territory. The "Licensed Marks" are identified in Exhibits B–1 and B–2 of the License Agreement. (License Agreement at Exh. B–1, B–2.) The Distributorship Agreement also contains a provision allowing for the use of Harley–Davidson's

trademarks. (Distributorship Agreement, Section 13.2.) The trademark rights granted in the Distributorship Agreement are more limited than the rights conveyed by the separate License Agreement. The Distributorship Agreement grants a non-exclusive license to the distributor to display certain trademarks. *Id.*

The HMVILA applies to entities and agreements relating to the sale and distribution of motor vehicles. Haw.Rev.Stat. §§ 437–1, 437–1.1. The HMVILA defines "franchise" or "franchise agreement" as "any contract or agreement between a dealer and a manufacturer or distributor that authorizes the dealer to engage in the business of selling or purchasing any particular make or makes of new motor vehicles or motor vehicle parts manufactured or distributed by the manufacturer or distributor, or that establishes rights or obligations, or both, relating to the dealer's new motor vehicle operation, including agreements relating to dealership facilities or site control". Haw.Rev.Stat. § 437–1.1. The terms "dealer" and "distributor" are also defined in relation to the sale of motor vehicles. *See* Haw.Rev.Stat. § 437–1.1.

The Complaint contains insufficient factual allegations to state a plausible claim for violation of the HMVILA based on the License Agreement. Cycle City's claim with regard to the License Agreement is part of Count I and is not stated as a separate claim. As pled, Cycle City has not stated a claim for violation of the HMVILA based on the License Agreement. Cycle City is **GRANTED LEAVE TO AMEND** to attempt to state a claim for violation of the HMVILA based on termination or non-renewal of the License Agreement and/or to articulate another basis for its claim that Harley–Davidson breached the License Agreement.

### CONCLUSION

For the foregoing reasons,

(1) HARLEY–DAVIDSON MOTOR COMPANY, INC.'S MOTION TO TRANSFER CASE (ECF No. 28) is **DENIED.**

(2) HARLEY–DAVIDSON MOTOR COMPANY INC.'S MOTION TO DISMISS (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART.**

*Count I*

Harley–Davidson's Motion is **DENIED** as to **Count I** because Cycle City has stated a claim for violation of Haw.Rev. Stat. Section 437–28(a)(21) of the HMVILA.

(a) Cycle City is **GRANTED LEAVE TO AMEND** to allege claims based on violation of Haw.Rev.Stat. Sections 437–52(3) and 437–58 of the HMVILA.

(b) Cycle City has not sufficiently articulated a claim for violation of the HMVILA based on the failure to renew the License Agreement. Cycle City is **GRANTED LEAVE TO AMEND** to attempt to state a claim for violation of the HMVILA based on termination or non-renewal of the License Agreement and/or to articulate another basis for its claim that Harley–Davidson breached the License Agreement.

*Count II*

Count II is for declaratory relief and is based on the parties dispute as to their rights and obligations under the HMVILA. Harley–Davidson's Motion is **DENIED** as to **Count II.**

*Count III*

**Count III** is for breach of the Distributorship Agreement and its implied covenant of good faith and fair dealing based on Harley–Davidson's failure to renew the agreement and its price increases and term changes. Harley–Davidson's Motion is **DENIED** as to **Count III.**

(3) Cycle City's request for leave to amend is **GRANTED.** Cycle City may file a First Amended Complaint by December 1, 2014. The First Amended Complaint must conform to the rulings contained in this Order.

IT IS SO ORDERED.